L. J. (Leaster) MERRITT,
County Clerk *v.* Guy H. JONES Sr.

75-70                                          533 S.W. 2d 497

Opinion delivered February 23, 1976
[Rehearing denied March 29, 1976.]

*James Guy Tucker*, Atty. Gen., and *Alex Streett*, Prosecuting Atty., Fifth Judicial Circuit, by: *Robert M. Moore, Jr.*, Asst. Atty. Gen., for appellant.

*William M. Clark, Guy Jones Jr.*, and *Phil Stratton*, for appellee.

RANDALL W. ISHMAEL, Special Justice. In April, 1973 Appellee was tried in the United States District Court for the Eastern District of Arkansas, Western Division, and by jury verdict found guilty on four counts of filing fraudulent income tax returns in an attempt to evade taxes for the years 1965 and 1966; and making and subscribing false tax returns (26 U.S.C. 7201 and 26 U.S.C. 7206(1).)

The sentence of the U.S. District Court was a fine of $5,-000.00. The imposition of sentence as to imprisonment only was suspended and Appellee was placed on probation for a period of three years.

Appellant in his capacity as County Clerk and Permanent Registrar of the voter registration list for Faulkner County obtained an authenticated copy of the U.S. District Court Judgment and Order of Probation, cancelled Appellee's name from the voter registration list and immediately gave notice of such cancellation to Appellee. This action by Appellant was under the apparent authority of Amendment 51 to the Arkansas Constitution, specifically:

Section 11. Cancellation of Registration.

(a) It shall be the duty of the Permanent Registrar to cancel the registration of voters: ·

\* \* \*

(4) Who have been convicted of felonies and have not been pardoned;

\* \* \*

It isn't necessary that we review each of the pleadings and procedural steps in the Circuit Court of Faulkner County. It is sufficient to say that upon petition of Appellee the Faulkner County Board of Registration (Board of Election Commissioners) ordered Appellant to reinstate Appellee's name to the voter registration list. Appellant appealed from that order by filing a complaint in the Circuit Court. Appellee demurred to the complaint and upon order of the Circuit Court the demurrer was sustained and Appellant's complaint dismissed.

This appeal is before us on three principal points:

(1) Was the Judgment and Order of Probation in the U.S. District Court a final conviction?

(2) Was the crime for which Appellee was convicted a felony within the meaning and purpose of Amendment 51 to the Arkansas Constitution, Section 11(a)(4)?

(3) Was Appellant as Registrar authorized to cancel Appellee's registration upon receiving notice of the conviction in the U.S. District Court?

At this point we find it helpful to set out the relevant portion of the Judgment and Order of Probation of the U.S. District Court:

IT IS ADJUDGED that the defendant is guilty as charged and convicted.

IT IS ADJUDGED that on Count I of the indictment, the defendant pay a fine to the United States in the sum of $5,000.00 and the imposition of sentence as to imprisonment only is suspended and defendant placed on probation for a period of three (3) years. Imposition of sentence suspended on Counts II, III and IV of the indictment and defendant placed on probation for a period of three (3) years, to run concurrently with probationary period imposed on Count I.

Appellee takes the position that because there was no imposition of a penitentiary sentence, there was no final conviction. We disagree. By the plain language of the judgment it is clear that there was a final conviction in the U.S. District Court.

As Appellee points out in his brief, there was not a sentence of imprisonment the execution of which was suspended, but rather the imposition of sentence as to imprisonment was suspended. Had there been no fine imposed, then we would agree that the judgment was not final as there was something remaining to be done. In fact, however, a fine was imposed and in that regard the judgment was final and left nothing to be done but enforce execution or collection of the fine. In federal criminal prosecutions final judgment in the case means sentence. *Berman* v. *United States,* 58 S. Ct. 164, 302 U.S. 211, 82 L. Ed. 204 (1937). It is clear in this case that

Appellee was finally sentenced to a fine and such was unconditional and subject only to appeal by Appellee. We do not find this inconsistent with the opinion in *Tucker* v. *State,* 248 Ark. 979, 455 S.W. 2d 888 (1970). The obvious distinction here is that nothing further was to be done. There was an immediate and final sentence of a fine of $5,000.00 and neither the imposition nor execution of that sentence was suspended. Also, if there be any doubt remaining, we adopt the principle that there can be no fine unless there is a conviction. *Almond* v. *Countryside Casualty Company,* 329 F. Supp. 137 (W.D. Ark. 1971).

In considering whether the offense for which Appellee was convicted is a felony, we must examine the provisions of the federal law (Internal Revenue Code) under which he was prosecuted.

26 U.S.C.

Section 7201. ATTEMPT TO EVADE OR DEFEAT TAX.

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,-000.00 or imprisoned not more than five years, or both together with the cost of prosecution.

Section 7206. FRAUD AND FALSE STATEMENTS.

Any person who—

(1) * * *
Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter;

* * *

shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000.00, or imprisoned not more than three years, or both, together with the cost of prosecution.

In the purview of federal law the offenses are felonies and are specifically so stated to be. Also, while an attempt to evade taxes due to the State of Arkansas is characterized as a misdemeanor by our statutes (Ark. Stat. Ann. 84-2036) that is a totally different offense and Arkansas does not have a criminal sanction or provision of any kind for a violation of United States income tax laws or in particular any attempt to evade United States taxes. The question is: Was the offense for which Appellee was convicted a felony within the meaning and purpose of Amendment 51 to the Arkansas Constitution and specifically as the word "felonies" is used in Section 11(a)(4).

It has long been, if not always, the law in this State that an offense for which a person may be imprisoned in the state penitentiary is a felony. By the plain wording of the federal statutes, Appellee could have been imprisoned for up to five years in a penitentiary. It is not material that Appellee was not in fact sentenced to a term in the penitentiary and did not in fact serve any time. The relevant Arkansas Statute provides:

A felony is an offense of which the punishment is death or confinement in the penitentiary. (Ark. Stat. Ann. 41-103.)

We consider that to mean that if the maximum sentence for an offense is death or confinement in the penitentiary, then even though a lesser sentence is imposed, the offense is deemed a felony. This has been considered and decided by this Court in *Burrell* v. *State*, 203 Ark. 1124, 160 S.W. 2d 218 (1942):

"The fact that the amendment provided imprisonment in the Arkansas penitentiary would have been sufficient to make it a felony, under Section 2922 of Pope's Digest [now Ark. Stat. Ann. 41-103].

\* \* \*

Although under this amendment it is optional with the jury to fix a punishment at imprisonment in the Arkansas penitentiary, or at a fine, or at both fine and imprisonment, the offense is not reduced from a felony to a misdemeanor in the event a fine only is assessed."

Also, in *Shoop* v. *State*, 209 Ark. 642, 192 S.W. 2d 122 (1946):

The maximum penalty that may be imposed or the things authorized to be done are the controlling characteristics in determining whether an offense is a felony or a misdemeanor.

As Appellee could have been imprisoned in the penitentiary under the quoted statutes, we conclude that within the meaning of the term "felony" in the State of Arkansas the offenses were felonies.

In his brief Appellee has, starting with the Arkansas Constitution of 1868, traced the development of the provisions relating to qualifications of voters up to the point immediately before Amendment 51. Based upon the presence of the terms "felony at common law" and "felony . . . by law passed by the General Assembly" in other provisions of the Arkansas Constitutions and amendments prior to Amendment 51 and coupled with the argument that Amendment 51 did not amend any prior provisions regarding voter qualification but merely set forth a method of registration, Appellee· contends that his registration may not be cancelled except upon conviction of a felony at common law or a felony by laws passed by the General Assembly. First we address the proposition that Amendment 51 does not set qualifications for voters and thus does not amend previously existing provisions as to qualifications. Certainly a reading of Amendment 51 will show that some qualifications for voters are set forth clearly and at the very least Amendment 51 states specific disqualifications. To that extent previous provisions were amended by Amendment 51. Particularly with regard to

felonies Section 11(a)(4) uses the word "felonies" without limitation, qualification or condition. It is plain and unambiguous and in the absence of any other meaning being stated or at least implied we must interpret it to have superseded any former more restricted or defined term. With regard to the construction of constitutional provisions we stated in *State ex rel. Attorney General* v. *Irby*, 190 Ark. 786, 81 S.W. 2d 419 (1935):

> . . . we are irrevocably committed to the rule that the Constitution of this State should be construed as a frame of laws and not as an ordinary statute and that where the language employed in the Constitution is plain and unambiguous, the Courts cannot and should not seek other aids of interpretation and that every word used should be expounded in its plain, obvious and common acceptation. . . (Citations omitted.)

In examining the restrictive meanings urged by Appellee, we find that "felony at common law" is far too restrictive and could not realistically be read into the word "felonies" as used in Amendment 51. As the common law developed the meaning of the word "felony" changed. At one point it was restricted to the crimes of treason, murder, manslaughter, mayhem and larceny and at other times it was generally stated to be any offense which would occasion the forfeiture of either land or goods and to which capital or other punishment might be superadded. Other meanings from time to time in different jurisdictions were numerous.

As to the term "felony by law enacted by the General Assembly", that would ignore the laws of sister states and of the United States and would be equally unrealistic.

On the case before us we consider it of principal importance that the offense for which Appellee was convicted was one which we consider to be a felony within the purpose of Amendment 51. The laws violated were enacted by the Congress of the United States and were considered to be of such serious nature as to be characterized and punishable as felonies. And this Court in *Supreme Court Committee on Professional Conduct* v. *Jones*, 256 Ark. Appendix (1974), rejected all contentions that such violations did not involve

moral turpitude. In *State ex rel. Attorney General* v. *Irby*, we quoted the Supreme Court of North Dakota in *State, etc.* v. *Langer*, 65 N.D. 68, 256 N.W. 377, considering the rules stated to be sound and based upon reason and logic:

> A state has an undoubted right to provide in its constitution that persons may be . . . deprived of the right of suffrage by reason of having been convicted of crime. The manifest purpose of such restrictions upon this right is to preserve the purity of elections. The presumption is that one rendered infamous by conviction of felony, or other base offense indicative of moral turpitude, is unfit to exercise the privilege of sufferage. . . .

Appellee urges that even if there was a final conviction of a felony within the meaning of Amendment 51, then the action of Appellant as Registrar in cancelling the registration was not authorized. This argument is based upon Section 11(d) as follows:

> It shall be the duty of the Circuit Clerk of each county upon the conviction of any person of a felony to notify promptly the Permanent Registrar of the county of residence of such convicted felon.

Appellee asserts that such notice from an Arkansas Circuit Court Clerk is an absolute prerequisite to cancellation of a registration by the Registrar. That obviously is not the case. Subparagraph 11(d) simply states an additional duty of the circuit clerk and it is one method by which the Registrar may obtain information concerning disqualification of a voter. It could not be seriously contended that if a person was convicted of murder in a sister state or of bank robbery in United States District Court that he would still be a qualified voter in the State of Arkansas. Moreover, subparagraph 11(g) specifically provides that the registrar may by house to house canvass or *any other reasonable means* determine whether the active registration files contain the names of any person not qualified to vote. That subsection also provides for the Prosecuting Attorney upon affidavits to apply for an order of the Circuit Court to determine or cancel a registration. That procedure likewise is only one method and it is not exclusive.

In this case appellant obtained an authenticated copy of the Judgment and Order of Probation of the U.S. District Court and we approve that procedure as one method of determining the action of the U.S. District Court upon a criminal prosecution.

Finally, Appellee cites an Act of Congress of June 22, 1868, 15 Stat. 72, Ch. 69, (Vol. 1, Ark. Stat. Ann. p. 313). We note that this point was not presented in circuit court, but we consider it so that the point may be laid to rest. The relevant portion of the cited statute provides:

> The Constitution of Arkansas shall never be so amended or changed as to deprive any citizen or class of citizens of the United States to the right to vote who are entitled to vote by the Constitution herein recognized, except as a punishment for such crimes as are now felonies at common law, whereof they shall have been duly convicted under laws equally applicable to all of the inhabitants of said state. . . .

First, we must consider that this Act was in 1868, soon after the Civil War, and it was designed and intended to prevent unconstitutional criminal laws as a means of depriving former slaves of the right to vote. That is no longer a consideration. The Act purports to state the conditions upon which the State of Arkansas would be readmitted to the Union and be entitled to representation in Congress, but the Supreme Court has ruled that the Confederate States were never out of the Union and, hence, there was no necessity for readmission. *State of Texas* v. *White*, 7 Wall 700, 74 U.S. 700, 19 L. Ed. 227. Even if we assume that the Act has some force and effect, its enforcement is in the exclusive domain of Congress. Such was the determination when identical language was considered in an act concerning the State of Virginia's constitutional poll tax requirement. *Butler* v. *Thompson*, 97 F. Supp. 17, affd., 341 U.S. 937, 95 L. Ed. 1365, 71 S. Ct. 1002.

In conclusion we are of the opinion that Appellee was finally convicted of a felony within the meaning and purpose of Amendment 51 to the Arkansas Constitution and the

procedure and action of Appellant as registrar in cancelling Appellee's name from the voter registration list of Faulkner County was lawful and proper. The judgment of the circuit court is reversed with direction to overrule the demurrer, reinstate Appellant's complain as amended and proceed further as appropriate and consistent with this opinion.

Roy, J., not participating.