Vic SNYDER *v.* Mahlon MARTIN, Director of the Arkansas Department of Finance and Administration; and Tommy Bailey, Manager of the Motor Fuel Tax Section of the Arkansas Department of Finance and Administration

90-138                                              806 S.W.2d 358

Supreme Court of Arkansas
Opinion delivered April 1, 1991

*Craig Lambert*, for appellant.

*David B. Kaufman*, for appellees.

JACK HOLT, JR., Chief Justice. The narrow issue on this appeal is whether Ark. Const. art. 19 § 12 requires public access to certain information concerning motor fuel taxes.

On March 30, 1988, appellant, Vic Snyder, attempted to inspect corporate motor fuel tax records that included the monthly "shrinkage allowance" given to motor fuel distributors. The appellee, Tommy Bailey, who is the manager of the Motor Fuel Tax Section of the Department of Finance and Administration (DFA), denied Snyder access to these records on the basis of Ark. Code Ann. § 26-18-303(a), (c) (1987), which prohibits disclosure of corporate and individual tax returns and information.

Snyder brought suit against the appellees, Mr. Bailey and Mahlon Martin, Director of the DFA, seeking declaratory and injunctive relief and claiming that section 26-18-303 conflicts with Ark. Const. art. 19 § 12, which requires publication of all

receipts and expenditures of public money. Both sides made motions for summary judgment. The trial court granted the appellees' motion on the ground that the shrinkage allowances provided to motor fuel distributors were not "expenditures" within the meaning of art. 19 § 12, and found that Snyder was not entitled to injunctive relief since he had not demonstrated irreparable harm.

Snyder's appeal is limited to the denial of declaratory relief in which he requested that the statute be declared unconstitutional. We affirm the chancellor.

Section 26-18-303, which operated to bar Snyder from inspection of the motor fuel tax records, states in pertinent part:

> (a)(1)   The director is the official custodian of all records and files required by any state tax law to be filed with the director and is required to take all steps necessary to maintain their confidentiality.
>
> (2)(A)   Except as otherwise provided by this chapter, the records and files of the director concerning the administration of any state tax law are confidential and privileged. These records and files and any information obtained from these records or files or from any examination or inspection of the premises or property of any taxpayer shall not be divulged or disclosed by the director or any other person who may have obtained these records and files.
>
> (B)   It is the specific intent of this chapter that all tax returns, audit reports, and information pertaining to any tax returns, *whether filed by individuals, corporations, partnerships, or fiduciaries*, shall not be subject to the provisions of 25-19-101 et seq.[1]

---

[1] These provisions refer to the Freedom of Information Act. Section 25-19-105(a) of the Act states that public records shall be open to inspection unless specifically excluded by the Act or "by laws specifically enacted to provide otherwise."

At the time of our decision in *Ragland* v. *Yeargan*, 288 Ark. 281, 702 S.W.2d 23 (1986), section 26-18-303 prevented disclosure of individual tax returns and information only. There, we held that where the legislature fails to specify any records that are to be excluded from inspection, privacy yields to openness. As amended, section 26-18-303 now clearly provides that both individual and corporate tax information is to be protected and there is thus no question, here, of conflict with the FOIA and a discussion of this section of

* * * *

(c) The provisions of this section shall be strictly interpreted and shall not permit *any other disclosure of tax information concerning a taxpayer*, whether the taxpayer is an individual, a corporation, a partnership, or a fiduciary, that is contained in the records and files of the Director of the Department of Finance and Administration relating to income tax or any other state tax administered under this chapter. (Emphasis added.)

Snyder contends that this statute directly conflicts with art. 19 § 12, which provides:

An accurate and detailed statement of the receipts and expenditures of the public money, the several amounts paid, to whom and on what account, shall, from time to time be published as may be prescribed by law.

We agree with the trial court that the term "expenditures," contained in the above constitutional provision, does not include the shrinkage allowance permitted to the motor fuel distributors.

The allowance is provided by our Motor Fuels Tax Law, codified at Ark. Code Ann. § 26-55-201 through 1004 (1987). In accordance with section 26-55-230, which is similar to the procedure utilized in a number of other states, a distributor reports the total number of gallons of motor fuel received into the state during the previous calendar month to the Motor Fuel Section of the DFA. From the amount of gasoline fuel received, the distributor deducts the number of gallons of fuel sold, as provided in section 26-55-230(a)(1). After these deductions have been subtracted, the distributor is allowed to deduct an additional 3% of the first 1,000,000 gross taxable gallons to cover "evaporation, shrinkage, and the losses resulting from unknown causes, regardless of the amount thereof, and the cost of collection." This number is then deducted from the gross taxable gallons, and the remainder is multiplied by the appropriate tax rate to determine the motor fuel tax to be remitted by the distributor.

---

the code is not necessary for our decision.

■ In examining the Motor Fuels Tax Law, we observe that this allowance is a deduction and, in fact, is labelled as such in the Computation and Payment of Tax statute, section 26-55-230. The fuel tax is placed on the product in the hands of the distributors, not the retailers, and is remitted to the state *after* the distributors have taken their allowed deductions, including the 3 % shrinkage allowance. Simply put, the statute merely operates to reduce the amount of "property," in the hands of the distributor, to be taxed and has nothing to do with collection of taxes from dealers.

"Expenditures" is not defined by our constitution, nor in our statutes or case law. Its broad meaning is any laying out or disbursement of money. *See* 35 C.J.S. *Expenditure* (1957). This implies the spending of money already in the state's hands rather than the deduction of monies never counted as part of the state's budget.

■■ Although Snyder argues that this holding would exalt form over substance, we have said that where the language employed in the constitution is plain and unambiguous, every word should be expounded in its plain, obvious, and common acceptation. *Merritt* v. *Jones*, 259 Ark. 380, 533 S.W.2d 497 (1976); *Bishop* v. *Linkway Stores, Inc.*, 280 Ark. 106, 655 S.E.2d 426 (1983). Furthermore, it has long been the rule that all legislation is presumed to be constitutionally valid, and all doubt is to be resolved in favor of constitutionality. *Fisher* v. *Perroni*, 299 Ark. 227, 771 S.W.2d 766 (1989); *Davis* v. *Cox*, 268 Ark. 78, 593 S.W.2d 180 (1980).

■■ We review chancery cases *de novo* on appeal and will not reverse a chancellor's finding unless clearly erroneous. *Killam* v. *Texas Oil & Gas Corp.*, 303 Ark. 547, 798 S.W.2d 419 (1990). The chancellor's finding that the deduction permitted by statute for "shrinkage allowance" was not an appropriation of public money within the framework of art. 19, § 12 was correct. It is merely a deduction, nothing more. Denial of Snyder's motion for summary judgment, and the granting of the appellees' motion, was proper. Summary judgment is proper when there is no genuine issue of material fact, as here, and when the moving party is entitled to judgment as a matter of law. *Woods* v. *Hopmann Mach. Inc.*, 301 Ark. 134, 782 S.W.2d 363 (1990).

In a well-written dissent, the minority extrapolates various provisions of our Motor Fuels Tax Laws statutes and arrives at the conclusion that somehow, somewhere, fuel taxes are collected from the retailer. It may be true that these taxes are either passed on to, or perhaps ultimately collected from, other sources, after the distributor has paid the tax; however, the fact still remains that under our present code, the taxes are placed upon the product in the hands of the distributor and his records are protected under section 26-18-303. Furthermore, Ark. Code Ann. § 26-55-249 (1987), cited by the minority, is impliedly repealed by section 26-18-303.

Affirmed.

HAYS, GLAZE and BROWN, JJ., dissent.

TOM GLAZE, Justice, dissenting. I respectfully dissent. The majority, I suggest, is incorrect when it says the Computation and Payment of Motor Fuel Tax statute (Ark. Code Ann. § 26-55-230) merely operates to reduce the amount of "property" in the hands of the distributor to be taxed, "and *has nothing to do with collecting of taxes from dealers.*" I also disagree with the majority's conclusion that "the fuel tax is placed on the product (fuel) in the hands of the distributors, not the retailers, and is remitted to the state *after* the distributors have taken their allowed deductions, including the 3 % shrinkage [and collection fee] allowance."

In making such statements, the majority opinion would lead the reader to believe that the amount of fuel sold to retailers has nothing to do with the amount a distributor retains for the collection of taxes. First, Tommy Bailey, Manager of the Department of Finance and Administration (DFA), related that the 3 % allowance is "understood as a credit in exchange for the distributor's *collecting the [fuel tax] from the retail merchant.*" Bailey's statement is supported by § 26-55-230(E), which specifically refers to cost of collection. Also, it is important to point out that a "retail merchant" falls within the definition of the term "dealer" as set out in the definition section of the Motor Fuels Taxes laws. *See* Ark. Code Ann. § 26-55-202(7) and (8) (Supp. 1989).

Next, the court's inaccuracies can be illustrated or explained by an examination of how the state levies and collects motor fuel

taxes. The parties agree that a 13.5 cent tax is levied on each gallon of motor fuel, which means all products commonly or commercially known or sold as gasoline. Distributors, as defined in relevant part under the Motor Fuels Tax Law, include any persons who are in the wholesale business offering for resale or delivery of motor fuels to dealers, consumers, or others in tanks of 200 gallons or more. § 26-55-202(7). These distributors are subject to state licensing and bonding laws that, generally stated, are to protect the state in the amount of the gasoline taxes the distributor is estimated to collect based upon the gallonage of motor fuel to be sold. Ark. Code Ann. §§ 26-55-213 to -228 (1987); e.g. *see* § 26-55-222(a)(2). Distributors must make a monthly report to the state that covers, among other things, the following:

> 1. The number of gallons of all motor fuel received by the distributor;

> 2. The number of gallons of motor fuel received by the distributor but deducted in accordance with provisions of Ark. Code Ann. § 26-55-230(a)(1)(C) or (D) in making any previous monthly report with respect to which motor fuel so deducted the tax payable has not been paid;

> 3. The number of gallons of motor fuel sold by the distributor during the preceding month and exempted under Ark. Code Ann. § 26-55-207(1) - (4) (1987).

Finally, and relevant to the specific issue posed in this appeal, state law provides that distributors are entitled to an allowance for the cost of collection of these motor fuel taxes. This allowance is also commonly referred to as an evaporation or shrinkage allowance.[1] This allowance amount is based upon 3% of the first

---

[1] Significantly, no statute or regulation assigns what part of the 3% allowance is attributed to shrinkage or evaporation of fuel and what amount of it pays (or is credited to) the distributor for its collecting the fuel taxes from retail merchants, as described by DFA Manager Tommy Bailey. Obviously, the percentage for evaporation has nothing to do with the actual resale of fuel to dealers, retailers or consumers except to recognize that the distributor should not be charged or credited with an estimated amount that will dissipate and therefore not be available for resale. That percentage, however, that is credited to the distributor as collection costs *is* based upon sales to dealers, or is already acknowledged by the DFA.

1,000,000 gallons of motor fuel received by a distributor. *See* Ark. Code Ann. § 26-55-230(a)(1)(F) (Supp. 1989). The director of the DFA provides for the payment and collection of the motor fuel tax. Ark. Code Ann. § 26-55-230(c) (Supp. 1989).

Putting the foregoing into practice, let us assume distributor A received 2,000,000 gallons of motor fuel, but 500,000 gallons of it are exempt from the motor fuel tax because the distributor has those 500,000 for export to another state. Ark. Code Ann. § 26-55-207(2) (Supp. 1989). After deducting the 500,000, the distributor's report reflects gross taxable gallons in the amount of 1,500,000. Distributor A, in completing its report, shows that, for its collection or shrinkage allowance, it is entitled to 3% of the first 1,000,000, or 30,000 gallons, of the gross taxable gallons. After deducting the 30,000 gallons, 1,470,000 gallons remain upon which the state can expect to levy *and* receive taxes, *viz.*, 1,470,000 x 13.5 cents = $198,450.00. For its shrinkage *and* collection efforts, the distributor gets a deduction amounting to $4,050.00, which is calculated by multiplying his 30,000 gallons by the 13.5 cent fuel tax levy.

The foregoing state statutes and procedures clearly reflect the distributor's collection amount is based upon a distributor's sales of motor fuel to dealers or consumers, and also dispels any idea that the fuel tax is merely placed on the motor fuel possessed by the distributor rather than fuel sold to retailers. Thus, the gallons of motor fuel received by a distributor eventually translates into public tax dollars paid by retailers. The distributor remits those tax monies to the state less the distributor's allowance amount.

Undoubtedly, the tax monies remitted to the state and credited and retained as allowances by distributors are clearly public monies. Obviously, none of these proceeds would exist but for the state's tax levying authority. *See* Ark. Code Ann. § 26-55-205 (Supp. 1989) (which in relevant part provides that the motor fuel excise tax is levied on each gallon of motor fuel sold in or used or purchased or used in this state). Even so, does the allowance received or credited to the distributor amount to a public "expenditure" as that term is used in Ark. Const. art. 19, § 12. That is the primary issue now before this court. The trial court (and this court) held such an allowance was not such a public

expenditure, but I disagree.

Section 12 of Ark. Const. art. 19 provides for the disclosure of detailed statements of receipts and expenditures of public money. While that constitutional provision does not define the term expenditure, I certainly agree with the majority court's definition that expenditure means any laying out or disbursement of money. However, I disagree with the majority's misapplication of that term to the facts and law involved in this case.

In the present case, the statutory formula by which distributors receive their collection or shrinkage allowance is worded so as to avoid the usage of the term "expenditure" and admittedly that statutory scheme under the Motor Fuel Tax laws does not require distributors to pay *all* motor fuel taxes to the state so as to avoid, I suggest, the state having to remit a payment in turn for the allowance due and payable to the distributor. Nevertheless, regardless of how a distributor receives his allowance, that allowance, in part, is in payment for collection costs. In other words, the state has delegated to distributors its authority to collect (as well as account for) motor fuel taxes, and, by law, has provided a procedure by which the distributor is disbursed a percentage amount of the tax monies that pays the distributor for its cost of collection services. In my view, this allowance clearly is a lay out or disbursement of public funds as that term of expenditures is defined in the majority opinion. That being true, such allowances received by the distributor are public expenditures subject to the public disclosure provided for under Ark. Const. art. 19, § 12.

For clarity's sake, I add that I do not believe a taxpayer's income tax return is subject to review, nor do I understand appellant to request such. Appellant seeks only the inspection of those records pertaining to motor fuel taxes which have heretofore been subject to inspection, *see* Ark. Code Ann. § 26-55-249 (1987), and which I believe is required under the Arkansas Constitution for the reasons described above. Section 26-55-249 provides the records of the director of DFA pertaining to *motor fuel taxes shall at all reasonable times be open to the inspection of the public with the approval of the director.* This law has not been specifically repealed. Nor do I see it having been repealed impliedly by Ark. Code Ann. § 26-18-303, which the majority

cites as prohibiting disclosure of the fuel tax (3% allowance) information requested by appellant here.

The primary purpose of § 26-18-303 is to protect the confidentiality of tax returns and information they contain, not disbursements or expenditures the state has made of public monies. Any broader interpretation given § 26-18-303 would allow such information as public relations expenditures paid to public officials (or even their salaries) to be unavailable for inspection since those items would be reflected in tax returns.

In this respect, while not argued by the parties, I am convinced that § 26-55-249 is still operative and the motor fuel tax information now sought by the appellant is available for inspection subject to the DFA director approving the time and place for such inspection. But, regardless of whether § 26-55-249 controls the case, I am convinced this same fuel tax information is open to disclosure under Ark. Const. art. 19 § 12 as discussed above and that information, not tax returns, should be made available to the appellant.

For these reasons, I would reverse.

HAYS and BROWN, JJ., join this dissent.