Cite as 2020 Ark. 21

# SUPREME COURT OF ARKANSAS

No. CV-19-809

| | |
|---|---|
| | Opinion Delivered: January 23, 2020 |
| JAMES WINFIELD WYATT | |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT |
| V. | [NO. 60CV-19-7095] |
| TYRAY CARR; PULASKI COUNTY BOARD OF ELECTION COMMISSIONERS; AND JOHN THURSTON, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE | HONORABLE WENDELL GRIFFEN, JUDGE |
| APPELLEES | AFFIRMED. |

**KAREN R. BAKER, Associate Justice**

Appellant James Winfield Wyatt appeals the Pulaski County Circuit Court's order granting appellee Tyray Carr's petition for writ of mandamus and declaratory judgment, declaring Wyatt ineligible to file for, be elected to, or hold the office of circuit judge, and ordering Arkansas Secretary of State John Thurston, ("Thurston") and the Pulaski County Board of Election Commissioners ("PCBEC") to not certify Wyatt as a candidate for circuit court judge or to annul any certification already granted. On appeal, Wyatt argues that the circuit court erred by removing him from the March 2020 ballot. On cross-appeal, Carr argues that the circuit court erred by failing to award him attorney's fees and abused its discretion in failing to require a bond on appeal. This court has jurisdiction over the

present case pursuant to Arkansas Supreme Court Rule 1-2(a)(4) because it involves issues pertaining to elections and election procedures. We affirm.

On September 18, 2019, Wyatt filed to be placed on the ballot as a candidate for the office of Sixth Judicial District, Division Fourteen circuit court judge in the March 3, 2020 election. On October 4, 2019, Carr, a registered voter and resident of Pulaski County, filed a petition for writ of mandamus and declaratory judgment in the Pulaski County Circuit Court. In his petition, Carr alleged that Wyatt is ineligible to run for public office because he had been found guilty of three misdemeanor hot-check violations pursuant to the Arkansas Code Annotated section 5-37-302. Carr contended that because the intent to defraud is an element of the crime, he was ineligible to hold public office pursuant to article 5, section 9 of the Arkansas Constitution and Arkansas Code Annotated sections 21-8-301 et seq. As relevant to the present appeal, Carr sought a declaratory judgment and writ to the effect that Wyatt had been convicted of an "infamous crime" and a "public trust crime" and is therefore ineligible to run for public office; that Wyatt was responsible for Carr's attorney's fees and costs under Arkansas Code Annotated section 21-8-303; and that Thurston and the PCBEC will not certify Wyatt as a candidate or will annul any certification already granted; nor place Wyatt's name on the ballot nor count any votes for Wyatt. Carr attached certified docket sheets from the Pulaski County District Court in support of his claim regarding Wyatt's hot-check convictions.

On October 8, 2019, Wyatt responded and denied Carr's allegations that he was ineligible to run for public office. On the same day, Thurston responded and admitted

2

that Carr was a registered voter in Pulaski County and that Wyatt had filed a petition seeking candidacy for Pulaski County Circuit Judge. On October 9, the PCBEC responded. Both Thurston and the PCBEC stated that they were nominal defendants and will abide by any order issued by the circuit court.

On October 9, a hearing was held on Carr's petition for writ of mandamus and declaratory judgment. Carol Wilkins, Chief Court Clerk Administrator for the Pulaski County District Court, testified regarding the certified docket sheets referenced in the petition. Wilkins testified that she made photocopies from the physical docket book of the district court and then certified them as official copies from the district court. The first docket sheet contained an entry for case number 92-1-23926, which was a misdemeanor charge of violating the hot-check statute, Arkansas Code Annotated section 5-37-302, against defendant "James W. Wyatt," age "25," with a violation date of "11-18-92." The plea column was blank, and the comments stated "1CK+FEE/$22.31/CASH BOND." The cash collected was $22.31. The second docket sheet had an entry for case number 94-1-2137, which was another misdemeanor charge of violating the hot-check statute against defendant "James Wyatt," with a violation date of "06.17.94." The comments stated "One CK + FEE/173.24," and there was a handwritten notation of "Bond forfeited." The bond posted was $454.49. The third docket sheet contained two entries for "James Wyatt," case numbers 92-1-22597 and 92-1-22598. Case number 92-1-22597 was another misdemeanor charge of violating the hot-check statute with a violation date of "09-04-92." The comments indicated "1 CK & FEE $43.06/CHEQNET," and the cash collected was

3

$324.31. Case number 92-1-22598 involved a felony hot-check charge with the same violation date of "09-04-92." The comments stated "1 CK & FEE $357.83/CHEQNET," and the cash collected was $639.10.

Wilkins testified that the district court also utilizes an electronic case-management system. Through the electronic system, official paper documents of the district court become electronic records. Wilkins testified that conversions to new electronic systems took place in June 2005 and October 2013. With regard to "James Winfield Wyatt," the certified electronic records also reflected entries on case numbers 92-1-23926, 94-1-2137, 92-1-22597, and 92-1-22598. The violation dates for each case number are consistent with the dates contained in the photocopies of the physical docket book. However, on three of the four cases, the electronic records additionally reflected Wyatt's 1993 bar number. The three 1992 cases also included a notation referencing a "PRIOR 06/21/93 SETTLEMENT-DISTRIBUTION UNKNOWN" and that he had entered a plea of guilty. The 1994 hot-check violation also listed a victim as "Financial Solutions Inc."

Brad Cazort, director of the Arkansas Crime Information Center (ACIC), testified that Arkansas law requires law enforcement agencies and other court agencies to send criminal information to the ACIC. Cazort testified that an ACIC records search revealed no record of Wyatt.

Wyatt testified that he was unaware of the hot-check charges contained in the certified court records until Carr's petition was filed. Wyatt denied that he had entered a plea of guilty to the charges or paid the fines referenced in those records. Wyatt testified

4

that he had never been convicted of either a felony or a misdemeanor. He admitted that his name was James Winfield Wyatt and that he would have been twenty-five years old at the time of the charge in case number 92-1-23926, as was reflected in the docket entry for that case.

Detective Tommy Hudson with the Little Rock Police Department testified that as part of his job, he performs criminal-history searches. He primarily focuses on the ACIC to perform criminal-history searches but also uses CourtConnect. Detective Hudson testified that the only truly reliable way to confirm the identity of a criminal defendant is through fingerprints. He testified that in his experience, hot-check defendants are not fingerprinted. However, Detective Hudson testified that if a person is not listed in the ACIC, it is possible that he could have been charged with a prior misdemeanor offense, although it was highly unlikely.

At the conclusion of the hearing, the circuit court found that Carr had met his burden of proving that Wyatt had been convicted of an infamous crime and a public trust crime, which renders Wyatt ineligible to run for the office of circuit judge. The court granted the petition for writ of mandamus and ordered Thurston and the PCBEC not to certify Wyatt as a candidate for circuit judge or place his name on the ballot.

On October 11, 2019, Carr filed a motion for costs and attorney's fees. Carr attached an invoice for $3,065 in costs and fees incurred and requested that he be awarded a judgment in that amount pursuant to Arkansas Code Annotated section 21-8-303(b).

On October 15, Wyatt filed his notice of appeal. In his notice of appeal, Wyatt sought to appeal (1) the circuit court's October 9, 2019 ruling; and (2) the final judgment granting writ of mandamus and declaratory relief, which had not yet been entered. On the same day, Wyatt filed a motion to stay in the circuit court.

On October 18, Wyatt filed a petition for writ of certiorari to complete the record and motion for expedited consideration in this court. Wyatt acknowledged that no written order had been entered by the circuit court as of the October 18 filing. However, he noted that he had filed a notice of appeal and ordered a transcript of the October 9 hearing. In his petition for writ of certiorari, Wyatt requested that we issue a writ of certiorari to the Pulaski County Circuit Clerk, the circuit court, and the court reporter to complete the record. Specifically, Wyatt sought the transcript of the October 9 hearing and the entry of a formal judgment. Additionally, Wyatt sought expedited consideration in this court. On October 22, Carr filed his response in opposition to Wyatt's petition for writ of certiorari and motion for expedited consideration. Carr urged this court to deny Wyatt's petition because the order Wyatt sought to appeal had not yet been entered by the circuit court. On October 23, we denied Wyatt's motion for expedited consideration.

On October 22 and October 24, 2019, supplemental records were tendered in this court. The October 22 supplemental record contained the transcript of the October 9 proceeding and exhibits. The October 24 supplemental record contained the circuit

6

court's October 23 order[1] granting Carr's petition for writ of mandamus and motion for declaratory judgment. Specifically, the circuit court entered the following findings of fact:

4. The Court finds that the certified Pulaski County District Court records show that:

a. in Pulaski County District Court case no. PC92-1-23936, *State v. James Wyatt*, the defendant is identified as "James Winfield Wyatt," age 25 on 11-24-1992 and the certified docket lists citation label WR42623 for a violation dated 11-18-1992 and identifies the violation described as AR Hot Check MISD under Ark. Code Ann. § 5-37-302, and states that the defendant (James Winfield Wyatt) "**entered a plea of guilty. Defendant guilty**." The certified docket reflects payment of $22.31 received.

b. in Pulaski County District Court case no. PC92-1-22597, *State v. James Wyatt*, the defendant is identified as "James Winfield Wyatt, and the certified docket lists citation label WR43009 for violation filed on 9-4[-]1992 and identifies the violation described as AR Hot Check MISD under Ark. Code Ann. § 5-37-302, and states that "**Defendant entered a plea of guilty. Defendant guilty**." Payment received is listed as $324.

c. In Pulaski County District Court case no. PC92-1-22598, *State v. James Wyatt*, the certified court docket identifies defendant as ["]Wyatt, James Winfield" for citation labe[le]d WR43010, filed 9-4-1992 for a violation described as AR Hot Check Fel under Ark. Code Ann. § 5-37-302, and states that "**Defendant entered a plea of guilty. Defendant guilty**." Payment received is listed as $639.

d. In Pulaski County District Court case no. PC94-1-2137, *State v. James Wyatt*, the certified court docket identifies defendant as "Wyatt, James Winfield" for citation labeled WR50863, filed 6-17-1994 for a violation described as AR Hot Check MISD. No disposition is stated in this case number.

5. Respondent James W. Wyatt admitted that he was age 25 on 11/24/1992, the date that the certified Pulaski County District Court record lists James W. Wyatt as being age 25.

---

[1] The order contains a handwritten notation that it is "nunc pro tunc to 10-9-19".

7

In granting Carr's petition for writ of mandamus and motion for declaratory judgement, the circuit court found that Carr had established by a preponderance of the evidence that Wyatt had entered guilty pleas to violations of the Arkansas Hot Check Law pursuant to Arkansas Code Annotation section 5-37-302. Thus, Wyatt's guilty pleas render him ineligible to file for, seek, be elected to, or hold the office of circuit judge. Further, the circuit court ordered Thurston and the PCBEC to not certify Wyatt as a candidate for circuit court judge or to annul any certification already granted, nor place his name on the ballot, nor count any votes cast for Wyatt. The order made no mention of Carr's motion for attorney's fees and costs or Wyatt's motion for stay but stated that "all other relief not addressed herein is denied."

Also on October 23, Carr filed his notice of cross-appeal. On October 31, Wyatt's writ of certiorari was submitted to this court. On November 14, we granted Wyatt's petition for writ of certiorari to complete the record and the above-tendered records were filed as of this date. We also granted Wyatt's request for accelerated briefing.

*Direct Appeal*

On appeal, Wyatt argues that the circuit court erred by removing him from the ballot. Specifically, Wyatt argues that the circuit court applied the incorrect burden of proof in deciding Carr's petition. However, Wyatt argues that when assessed under any standard, the circuit court erred in finding that Wyatt was the person charged with the hot-check offenses and that he had pleaded guilty to the offenses.

8

This court has stated that the purpose of a writ of mandamus in a civil or a criminal case is to enforce an established right or to enforce the performance of a duty. *Smith v. Fox*, 358 Ark. 388, 193 S.W.3d 238 (2004). When requesting a writ of mandamus, a petitioner must show a clear and certain right to the relief sought and the absence of any other adequate remedy. *Manila Sch. Dist. No. 15 v. Wagner*, 357 Ark. 20, 159 S.W.3d 285 (2004). This court reviews the circuit court's decision to grant a writ of mandamus pursuant to the clearly-erroneous standard. *See Helena-West Helena Sch. Dist. v. Fluker*, 371 Ark. 574, 268 S.W.3d 879 (2007) (applying clearly-erroneous standard of review in mandamus and declaratory-judgment action).

Arkansas Code Annotated section 21-8-305(a) states that if a person has pleaded guilty or has been found guilty of a public trust crime, he or she shall not file as a candidate for, run as a candidate for, or hold a constitutional office. Circuit court judge is encompassed within the definition of "constitutional office." Ark. Code Ann. § 21-8-301(6). "Public trust crime" is defined as a crime prohibited under article 5, § 9 of the Arkansas Constitution. Ark. Code Ann. § 21-8-301(7). Article 5, § 9 provides that no person convicted of an infamous crime is capable of holding any office of trust or profit in this state. An "infamous crime" includes "a misdemeanor offense in which the finder of fact was required to find, or the defendant to admit, an act of deceit, fraud, or false statement[.]"

Wyatt does not dispute that a violation of the Arkansas Hot Check Law is a disqualifying infamous crime. Instead, Wyatt argues that the circuit court employed the

9

incorrect burden of proof in deciding Carr's petition for writ of mandamus. Wyatt argues that the proper standard of proof on a mandamus action in the circuit court was for Carr to demonstrate "clear and certain" entitlement to relief. Wyatt points out that the circuit court decided the facts in the present case under a preponderance-of-the-evidence standard. Wyatt asserts that the circuit court's application of an erroneous standard of proof requires this court to reverse and remand.

In response, Carr contends that in rejecting Wyatt's argument below, the circuit court stated that the cases Wyatt relied on did not involve the burden of proof. Instead, the circuit court noted that those cases involved the standard for standing in election-eligibility disputes. Specifically, the circuit court explained that in order to satisfy the standing requirement, the person asserting the election challenge "must assert a claim based upon a clear, direct or legal right. Inasmuch as this is a civil action, the burden of proof for all civil actions except for actions involving breach of fiduciary duty or other actions that specify, for instance, punitive damages, which requires clear and convincing evidence, is preponderance of the evidence."

We agree with the circuit court's application of the preponderance-of-the-evidence standard in its determination of whether Wyatt had been convicted of hot-check violations. As set forth above, a petitioner must show a clear and certain right to the relief sought and the absence of any other adequate remedy. *Wagner*, *supra*. Stated differently, Carr was required to demonstrate that he had a clear and certain right to the disqualification of Wyatt. As the circuit court found, the "clear and certain right" language is the standard for

10

determining standing in a petition for writ of mandamus involving a challenge to candidate eligibility. Thus, the circuit court was correct in its application of the preponderance-of-the-evidence burden of proof.

Next, Wyatt argues that the circuit court erred in finding, when assessed under any standard, that Wyatt was the person charged with, and who pleaded guilty to, the offenses. Wyatt contends that the contemporaneous dockets and later-created judgment, when considered as a whole, do not support the conclusion that Wyatt had entered pleas of guilty or been convicted of anything. Specifically, Wyatt argues that the contemporaneous records reflect only that bond forfeitures were assessed. Wyatt asserts that the later-created documents go beyond what is justified by the 1992 and 1994 records. He further points out that the ACIC does not reflect his convictions, and his bar number was added to the later-created records despite the fact that he did not become a licensed attorney until 1993, which was after the 1992 charges.

The circuit court found that Wyatt failed to present documentary evidence to contradict the certified Pulaski County District Court records; Wyatt admitted that he was twenty-five years old on November 24, 1992, which is consistent with the certified court record; and that according to Detective Hudson, it was possible that paper district court records had not been sent to the ACIC at the time of these crimes and adjudications of guilt. As noted by the circuit court during the hearing, when establishing a defendant's status as a habitual offender, a certified court record is sufficient to support a finding of a prior conviction or finding of guilt. *See* Ark. Code Ann. § 5-4-504(b)(1). Thus, we cannot

say that the circuit court clearly erred in its determination that Carr established by a preponderance of the evidence that Wyatt had pleaded guilty to and been convicted of violations of the Arkansas Hot Check Law. Therefore, we affirm the circuit court's order granting Carr's petition for writ of mandamus and motion for declaratory judgment.

*Cross-Appeal*

On cross-appeal, Carr argues that the circuit court erred as a matter of law in ignoring the requirement of Arkansas Code Annotated section 21-8-303(b) to award fees.

On review, "[o]ur general rule relating to attorney's fees is well established and is that attorney's fees are not allowed except when expressly provided for by statute." *Worsham v. Day*, 2019 Ark. 160, 574 S.W.3d 150 (citing *Chrisco v. Sun Indus., Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990)). A decision to grant or deny a motion for attorney's fees will not be set aside absent an abuse of discretion by the circuit court. *Ellis v. Ark. State Highway Comm'n*, 2010 Ark. 196, 363 S.W.3d 321.

The relevant statute at issue provides:

(a)(1) It shall be the duties and responsibilities of the prosecuting attorneys of this state to supervise compliance with this subchapter and to prosecute persons who violate the provisions of this subchapter.

(2) However, the Arkansas Ethics Commission shall also have authority to investigate and address alleged violations of this subchapter.

(b)(1) In the event the prosecuting attorney shall fail or refuse to enforce the provisions of this subchapter when the facts are known by him or her, or called to his or her attention, any citizen of this state may bring action in circuit court to force compliance with this subchapter.

12

(2) The citizen shall be entitled to receive reimbursements for expenses and reasonable attorney's fees upon the successful outcome of such litigation.

Ark. Code Ann. § 21-8-303.

Carr focuses on the language in subsection (b)(2) and argues that because he obtained the "successful outcome" of an eligibility lawsuit that resulted in a candidate being removed from the ballot, the circuit court erred as a matter of law in failing to award attorney's fees and costs. In response, Wyatt argues that Carr has improperly reframed the issue into a single inquiry of "successful outcome" only. Wyatt contends that in order to prevail on the issue of attorney's fees, Carr must first prove that the prosecuting attorney failed or refused to enforce the provisions of section 21-8-303. Ark. Code Ann. § 21-8-303(b)(1).

As Wyatt points out, the only information regarding this requirement is a letter filed by Carr's counsel on October 9, 2019. However, this letter was not introduced during the hearing and there was no other evidence presented during the hearing regarding whether the prosecuting attorney's office failed or refused to enforce the provisions of section 21-8-303. Accordingly, we cannot say that the circuit court abused its discretion in failing to award attorney's fees.

Next, Carr argues that the circuit court abused its discretion in failing to require a bond on appeal. Carr asserts that Rule 8(c) of the Arkansas Rules of Appellate Procedure–Civil requires a bond to be posted prior to requesting a stay on appeal. Carr contends that

once Wyatt sought to appeal his removal from the ballot, the circuit court abused its discretion in its failure to require a bond.

Rule 8(a) defines a supersedeas as a written order commanding appellee to stay proceedings on the judgment, decree or order being appealed from and is necessary to stay such proceedings. A supersedeas shall be issued by the clerk of the circuit court that entered the judgment, decree or order being appealed from unless the record has been lodged with the appellate court in which event the supersedeas shall be issued by the clerk of the appellate court. Ark. R. App. P.–Civ. 8(b). Whenever an appellant entitled thereto desires a stay on appeal, he shall present to the court for its approval a supersedeas bond which shall have such surety or sureties as the court requires. Ark. R. App. P.–Civ. 8(c).

In the present case, Wyatt did file motion for stay in the circuit court, but that request was not granted. Further, Wyatt did not request a stay from this court. Accordingly, as contemplated by Rule 8, the circuit court's order was not stayed pending appeal. Thus, we cannot say that the circuit court abused its discretion in failing to require a bond on appeal.

Accordingly, we affirm both the direct appeal and the cross-appeal. The mandate shall issue immediately.

Affirmed.

HUDSON, WOOD, and WYNNE, JJ., concur in part and dissent in part.

HART and WOMACK, JJ., dissent.

14

COURTNEY RAE HUDSON, Justice, concurring in part and dissenting in part. I concur with the majority's decision to affirm on direct appeal and to affirm the circuit court's denial of costs on cross-appeal. However, I would reverse and remand with respect to the circuit court's failure to award attorney's fees to appellee Tyray Carr.

The relevant statute, Arkansas Code Annotated section 21-8-303 (Repl. 2016), provides as follows:

> (a)(1) It shall be the duties and responsibilities of the prosecuting attorneys of this state to supervise compliance with this subchapter and to prosecute persons who violate the provisions of this subchapter.

> (2) However, the Arkansas Ethics Commission shall also have authority to investigate and address alleged violations of this subchapter.

> (b)(1) In the event the prosecuting attorney shall fail or refuse to enforce the provisions of this subchapter when the facts are known by him or her, or called to his or her attention, any citizen of this state may bring action in circuit court to force compliance with this subchapter.

> (2) The citizen *shall be entitled to receive reimbursements for expenses and reasonable attorney's fees upon the successful outcome of such litigation.*

(Emphasis added.)

Carr contends that the outcome of his petition was successful and that the circuit court was therefore required to award him reasonable attorney's fees under subsection (b)(2) of this statute. Wyatt asserts, however, and the majority opinion held, that Carr was not entitled to fees because he did not first satisfy subsection (b)(1) of this statute by providing proof that he had notified the prosecuting attorney and that the prosecuting attorney had failed or refused to enforce the statutory provisions.

15

I disagree. Carr's counsel filed a letter with the circuit court on October 8, 2019, the day before the hearing, in which he stated that

> under A.C.A. § 21-8-301 *et seq.* Prosecuting Attorney Larry Jegley was contacted regarding the underlying crimes and filings at issue in this matter by Counsel for Plaintiff. As is his right as set forth in the statute, Prosecuting Attorney Jegley has not brought a civil action. To the extent this Court takes testimony on compliance with A.C.A. § 21-8-301 *et seq.*, counsel ask that the pleading reflect as much per ARCP 15.

This letter was served on opposing counsel, as well as the Pulaski County Attorney's Office. While the letter was not introduced into evidence at the hearing, Wyatt presented no testimony or other evidence to contradict the assertions made therein, despite the fact that Carr's alleged failure to comply with subsection (b)(1) would arguably impact his standing to bring the action itself. Furthermore, the statute does not expressly require proof of compliance prior to an award of attorney's fees under subsection (b)(2). Because Carr's entitlement to bring the action under subsection (b)(1) was not refuted, and the outcome of the action was successful, I would hold that he is entitled to reasonable attorney's fees under this statute. I therefore dissent in part on cross-appeal.

WOOD and WYNNE, JJ., join.

JOSEPHINE LINKER HART, Justice, dissenting. I dissent. Carr did not meet his burden of proof below, and Wyatt should not have been removed from the ballot.

Carr's petition seeks an extraordinary form of relief that disrupts the ordinary function of our democratic process: removing a candidate from the ballot. Carr's petition seeks this relief through a request for a writ of mandamus. Sensibly, a petitioner seeking

16

such relief in this context must make a weighty showing to prove entitlement: "a *clear and certain right* to the relief sought and the absence of any other remedy." *Manila Sch. Dist. No. 15 v. Wagner*, 357 Ark. 20, 26, 159 S.W.3d 285, 290 (2004) (emphasis added) ("When requesting a writ of mandamus, a petitioner must show a clear and certain right to the relief sought and the absence of any other adequate remedy."). Carr has a right to have Wyatt removed from the ballot only if Wyatt has been "convicted" of an "infamous crime." Ark. Const. art. 5, § 9. While the *burden of proof* for purposes of a writ of mandamus is the same as in other civil cases ("a preponderance of the evidence"), *that which must be proven* is nonetheless a weighty showing, i.e., a "clear and certain right" to the relief sought. Even so, in a case such as the one before us, one would think this question could be resolved easily with a single piece of evidence: the original judgment of guilt or a certified copy thereof. However, that's not what happened here.

Here, the only evidence offered to satisfy this burden were documents that the circuit court identified as "certified docket(s)." Each of these documents is a printout from Pulaski County District Court corresponding to a hot-check case from either 1992 or 1995 involving James Winfield Wyatt. Three of these documents reflect a 2005 entry, made by someone unknown more than a decade after any adjudication would have occurred, stating that the "DEFENDANT (was adjudicated) GUILTY." For a number of reasons, this evidence is insufficient to satisfy Carr's burden of proof.

My first and primary point of disagreement with the circuit court is that the evidence discussed in the paragraph above does not stand for the proposition it was offered

17

for. While these documents were "certified" in the sense that Carr obtained them from Pulaski County District Court and that they bear a public seal, none of these documents is a "judgment" or other court order indicative of guilt and bearing a judge's signature. These are not even documents (or copies of documents) from the original case. All we know from these documents (and the related testimony at trial) is that since the 1992 and 1995 cases were adjudicated, most of the original documents from those cases were destroyed, and that on June 27, 2005, someone tasked with data-migration entered a notation in three of these matters that the defendant had pled guilty to the charge. The 2005 entry on these printouts is hearsay. The 2005 entry is necessarily a second-hand allusion to extraneous information and certainly does not qualify as a judgment or court order. There was no evidence presented as to which individual conducted the data-migration, who oversaw that process or whether there even was any such oversight, or whether that process involved anyone with a legal understanding of the difference between a guilty plea, a bond forfeiture, and other dispositions in criminal matters.

This is significant, considering that Wyatt himself testified emphatically that he has never pled guilty, been convicted, or otherwise been adjudicated guilty of any crime whatsoever. Moreover, Brad Cazort, the director of the Arkansas Crime Information Center (ACIC), the agency to which records of Arkansas criminal convictions are sent and maintained, testified that ACIC has no record of any arrest or conviction of Wyatt whatsoever.

The only "original" documents from the 1992 and 1995 cases are actual docket sheets from days when the hot-check cases came before the district judge while the cases were active. These documents do reflect that the 1992 and 1995 cases concerned a defendant named "James Wyatt," and one of the documents indicates that the defendant is 25, which is how old candidate Wyatt would have been at the time. But as to the disposition of these matters, the actual docket sheets only reflect "BF" in James Wyatt's cases, which would stand for bond forfeiture. There is no "G" in the blank for "plea," as is reflected in other cases on the same docket sheets for those days, which would obviously stand for a guilty plea.

Importantly, a bond forfeiture is not a conviction. While it does not appear that this court has ever expressly stated as much, in 1994, the Arkansas Attorney General did reach this conclusion in Opinion 94-252. Op. Ark. Att'y Gen. No. 252 (1994). Opinion No. 252 relied on *Almond v. Countryside Casualty Co.*, 329 F. Supp. 137 (W.D. Ark. 1971), *aff'd* 455 F.2d 503 (1972) in support of its analysis. In that the case, the federal district court pointed out that bond forfeitures were not among the actions considered convictions under what is now Ark. Code Ann. § 12-12-1001(5).

The majority notes that the "circuit court found that Wyatt had failed to present documentary evidence to contradict the certified Pulaski County District Court records," but that conclusion misses the point: Carr bears the burden of proof, not Wyatt. Carr had to prove that he had a "clear and certain right" to have Wyatt removed from the ballot, and that right could only be established by showing that Wyatt was "convicted" of an

19

"infamous crime." We can only affirm the circuit court's conclusion here if it is supported by substantial evidence. This would require a certified copy of the original judgment of conviction, or some other evidence so apparent and beyond reasonable question that it could be said to be "clear and certain." A second-hand notation entered by an unknown person on a non-original document over a decade after the matter was adjudicated is insufficient to satisfy this burden, especially considering the other evidence presented at trial in this matter. The evidence presented, including the testimony from ACIC, would just as strongly, if not more strongly, support that a person named "James Wyatt" reached an alternative resolution with the prosecutor whereby an amount was paid, and the matter was considered resolved. Obviously, that is not the same as appearing in court and pleading guilty to a crime or entering a guilty plea through counsel. *See* Ark. R. Crim. P. 24.3. But the fact that the evidence might support an explanation other than the one alleged in Carr's petition is immaterial—what matters is that Carr did not meet his burden of *proving* the required elements of his own case.

I dissent.

WOMACK, J., joins this opinion.

*LaCerra, Dickson, Hoover & Rogers, PLLC*, by: *Lauren White Hoover*, for appellant.

*WH Law, PLLC*, by: *Chris Burks*, for appellee Tyray Carr.

20