Cite as 2026 Ark. 21

# SUPREME COURT OF ARKANSAS

**No.** CV–26–60

| | |
|---|---|
| JOHN KYLE DAY | **Opinion Delivered:** February 11, 2026 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, THIRD DIVISION [NO. 60CV–25–15659] |
| V. | |
| LAURA "MISSY" MICHELLE WARDLAW; BRADLEY COUNTY BOARD OF ELECTION COMMISSIONERS; DESHA COUNTY BOARD OF ELECTION COMMISSIONERS; DREW COUNTY BOARD OF ELECTION COMMISSIONERS; COLE JESTER, IN HIS OFFICIAL CAPACITY AS ARKANSAS SECRETARY OF STATE; REPUBLICAN PARTY OF ARKANSAS; AND SHARON STUTHARD, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE STATE COMMITTEE OF THE REPUBLICAN PARTY OF ARKANSAS | HONORABLE CATHLEEN V. COMPTON, JUDGE |
| APPELLEES | AFFIRMED. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellant John Kyle Day of Drew County, Arkansas, is a candidate and voter in the

March 3, 2026 Republican Preferential Primary Election for House District 94,[1] Arkansas

House of Representatives. He petitioned the Pulaski County Circuit Court for a writ of

---

[1]House District 94 includes parts of Bradley, Desha, and Drew Counties.

mandamus and declaratory judgment finding that his opponent, appellee Laura "Missy" Michelle Wardlaw is ineligible to run for public office because she had been convicted of violating the Arkansas Hot Check Law, Arkansas Code Annotated section 5-37-302. After the circuit court denied his petition, he appealed to this court. *See* Ark. Sup. Ct. R. 1-2(a)(1) and (a)(4). For reversal, Day argues that (1) the circuit court erred when it denied his petition and did not declare Wardlaw ineligible based on her criminal case disposition of "Guilty – Bond Forfeiture"; and (2) the circuit court erred by permitting Wardlaw to maintain wholly inconsistent positions and contradict her and her counsel's concessions related to the hot-check case. We affirm.

On December 23, 2025, Day filed his verified petition for issuance of a writ of mandamus and declaratory judgment. In his petition, Day alleged that Wardlaw (formerly Byrd[2]) had been found guilty of an infamous crime in 2018—specifically, violating the Arkansas Hot Check Law, Arkansas Code Annotated section 5-37-302—in the Clark County District Court. Day sought to have Wardlaw declared ineligible to run for House District 94, removed from the ballot under article 5, section 9 of the Arkansas Constitution and Arkansas Code Annotated section 21-8-305(a), and for the Secretary of State and the respective county board of election commissioners to not count any ballots cast for Wardlaw. Attached to the petition were a certified copy of the district court docket and the arrest warrant issued in the case. In response, Wardlaw denied that Day was entitled to any relief and specifically denied that there had been a conviction or a finding of guilt in the

---

[2]In the district-court proceedings, Wardlaw is primarily referenced by her previous married name of Laura Byrd, but there is no dispute as to identity.

2

hot-check case. Wardlaw did not, however, contest or seek to collaterally attack the 2018 district court case.

The circuit court held a hearing on Day's petition on January 13, 2026. The parties stipulated to the admission of several exhibits from Wardlaw's 2018 hot-check case, no. ADS-18-2417: the certified docket; the warrant of arrest filed July 20, 2018; two documents from the Contexte case-management system; and a handwritten receipt from the Clark County Sheriff's Office. The arrest warrant issued by the district court showed a check amount of $73.98, along with a merchant fee of $30, and indicated that the victim was "Brookshire #96." The warrant also listed fees, costs, and fines for a total of $393.98 and a bond in that same amount. The receipt from the sheriff's office indicates that Wardlaw wrote a check for $393.98, leaving a balance of $0. The docket sheet shows the offense of violating Arkansas Code Annotated section 5-37-302(b)(1)(A) HOT CHECK <= $1,000 1ST OFFENSE, an unclassified misdemeanor. It reflects a plea date of September 27, 2018, with "NO PLEA" and a disposition date also of September 27, 2018, with the notation "GUILTY – BOND FOR" for bond "forfeiture." The docket sheet reflected the following amounts: $95 for general fines; $103.98 for restitution; $25 prosecuting attorney fee; $100 criminal court costs; $50 warrant service (sheriff); and $20 county jail fine. The total amount owed was $393.98, and the docket reflected that payments of $103.98 and $290.00 were received on September 27, 2018. The case was closed on October 1, 2018. Over Wardlaw's objection, Day also introduced a certified docket sheet from a 2016 speeding-violation case against Wardlaw; it showed a plea of "GUILTY" and a disposition of "DISMISSED – CIVIL P" for civil penalty.

Among the witnesses at the hearing was Penny Ross, the chief clerk of the Clark County District Court. Ross testified that, as chief clerk, she is present in court sessions and dockets for trials and plea and arraignments, enters dispositions after court, and does all the accounting for the court. When presented with the certified docket in Wardlaw's hot-check case, Ross explained that "Guilty – Bond Forfeiture" means that "the fine was paid before court" and "[t]hey never came to court." She compared the situation to paying a speeding ticket in lieu of coming to court—"you just pay a fine, and you're done with it." She further testified:

> Q: Does the entry of guilty cash bond forfeiture, mean that someone forfeited their bond due to a missed court date?
>
> A: Yes.
>
> Q: So the entry bond forfeiture is a forfeit for a missed court date?
>
> A: I would say they chose to pay their fine rather than come to court.

Ross further testified that the district court hears pleas and arraignments on Wednesdays. She explained that when a defendant does not appear for plea and arraignment and the bond has been paid, the judge announces "bond forfeiture." Ross stated that the arrest warrant for Wardlaw contained a plea and arraignment date of September 26, 2018, and that she entered the disposition of the case into the computer the following day, on September 27. She further testified that, in her experience, the district judge in Clark County sets bond amounts in the amount of the fines and restitution due in the case. According to Ross, appearance is not mandatory for a hot-check violation, unlike some other misdemeanor charges.

4

Michelle Hauge, office manager for the Clark County Sheriff's Office, testified regarding the procedures that office followed in accepting bond payments in criminal cases, and she identified the sheriff's-office receipt in this case reflecting payment by check of $393.98 before the court date. Hauge stated that funds are transmitted to the appropriate court on "court days." Jason Watson, the Clark County Sheriff, testified that when someone is served with a warrant and they are not taken into custody, they are usually given a copy of the warrant for informational purposes, including the court date. Coy Hasley, a former Arkadelphia police officer, testified that he and Wardlaw are longtime friends because their children grew up together. Officer Hasley testified that he saw the warrant for Wardlaw and notified her by phone; she came by the police department, where he may have given her paperwork; and she went that day to pay her bond.

Rhonda Harris, the senior manager of the Criminal History Division of the Arkansas Crime Information Center (ACIC), testified that she searched Wardlaw's name and did not find any criminal history. Harris acknowledged that she did not search under any prior names but stated that information under previous names should be "tied together."

Wardlaw testified that when her friend Officer Hasley called her to tell her that she had a warrant out for her arrest she initially thought he was joking. Wardlaw testified that he directed her to go "take care of it" at the sheriff's office. Wardlaw stated that she went there, learned the amount of her bond, and returned with a cashier's check. She remembered signing something that day, but she was unsure whether it was at the sheriff's office or the police station. In any event, she testified that she was not given any paperwork

or provided with a court date. Wardlaw testified that she never heard anything else about the hot-check case until being served with the petition in this case.

At the conclusion of the hearing, the circuit court denied the petition.[3] The court entered its written order on January 20, 2026, finding that "a bond forfeiture is not an admission of guilt" and holding that Wardlaw had been neither convicted of an infamous crime under article 5, section 9 of the Arkansas Constitution, nor had she pled guilty to, pled nolo contendere to, or been found guilty of a public trust crime as defined by Arkansas Code Annotated section 21-8-301(7). This timely appeal followed. On January 29, 2026, this court granted Day's motion for expedited consideration and set an accelerated briefing schedule.

On appeal, Day first argues that the circuit court erred when it denied his petition and did not declare Wardlaw ineligible based on her criminal case disposition of "Guilty – Bond Forfeiture."[4] We begin with the applicable law regarding candidate eligibility. Article 5, section 9 of the Arkansas Constitution provides that "[n]o person convicted of

---

[3]Although not precedent for this court, in its ruling from the bench the circuit court referenced *Miller v. Weeks*, 60CV-19-8714, in which Pulaski County Circuit Court Judge Chris Piazza ruled that a certified docket sheet on four hot-check charges showing "GUILTY–BOND FORF" did not disqualify Weeks from the ballot. The circuit court found that Weeks did not appear in court to enter a plea but instead forfeited money in lieu of a plea. As such, the court found that Weeks was not required to admit, and the district court was not required to find, "an act of deceit, fraud, or false statement." The case came to this court on appeal of Weeks's disqualification based on a fictitious-tags violation, but the bond forfeiture was not at issue. *Weeks v. Thurston*, 2020 Ark. 64, at 3 n.2, 594 S.W.3d 23, 24 n.2.

[4]Separate appellees Republican Party of Arkansas (RPA) and Sharon Stuthard, in her official capacity as Secretary of the State Committee of the RPA, and Secretary of State Cole Jester, in his official capacity, take no position on the merits of the appeal and stand ready to implement this court's ruling.

embezzlement of public money, bribery, forgery, or other infamous crime is eligible to the General Assembly or capable of holding any office of trust or profit in this state." Ark. Const. art. 5, § 9(a). An "infamous crime" includes "[a] misdemeanor offense in which the finder of fact was required to find, or the defendant to admit, an act of deceit, fraud, or false statement, including without limitation a misdemeanor offense related to the election process." *Id.* § (b)(4).

Under Arkansas Code Annotated section 21-8-305(a), "[i]f a person has pleaded guilty or nolo contendere to or has been found guilty of a public trust crime, he or she shall not" file as a candidate for, run as a candidate for, or hold a constitutional office. A position in the General Assembly is a constitutional office. *See* Ark. Code Ann. § 21-8-301(1) (Supp. 2019). "Public trust crime" is defined as a crime prohibited under article 5, section 9 of the Arkansas Constitution. Ark. Code Ann. § 21-8-301(7). Here, Wardlaw does not dispute that a violation of the Arkansas Hot Check Law is a disqualifying "infamous crime" and, therefore, a "public trust crime." Thus, it is undisputed that a hot-check conviction, whether based on a plea of guilty or no contest or based on a finding of guilt, renders a person ineligible for the Arkansas General Assembly.

As the petitioner, Day bore the burden of proving that Wardlaw is ineligible for the General Assembly. This court has previously approved a circuit court's application of the preponderance-of-the-evidence burden of proof in its determination whether a candidate for public office had disqualifying convictions. *Wyatt v. Carr*, 2020 Ark. 21, 592 S.W.3d 656. This court reviews the circuit court's findings in a bench trial pursuant to the clearly-erroneous standard. *See id.* (citing *Helena-W. Helena Sch. Dist. v. Fluker*, 371 Ark. 574, 268

S.W.3d 879 (2007)). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *Nicholson v. Upland Indus. Dev. Co.*, 2012 Ark. 326, at 6, 422 S.W.3d 108, 112.

In this appeal, Day contends that Wardlaw's case disposition of "Guilty - Bond Forfeiture" as stated on the docket is a definitive finding of guilt on the hot-check charge. He argues that bond forfeiture for failure to appear did not occur in the present case because no separate charge for failure to appear was pursued, and further, the imposition of fines, fees, and costs requires a conviction under Arkansas law. *Merritt v. Jones*, 259 Ark. 380, 533 S.W.2d 497 (1976) (stating that there can be no fine unless there is a conviction). Ark. R. Crim. P. 9.2(d) provides: "Nothing in this rule shall be construed to prohibit a judicial officer from permitting a defendant charged with an offense other than a felony from posting a specified sum of money which may be forfeited or applied to a fine and costs in lieu of any court appearance." According to Day, the "bond forfeiture" part of Wardlaw's disposition is best explained by operation of Arkansas Code Annotated section 16-84-115(3), which provides that "[u]pon judgment being rendered against a defendant for fine and costs, the court rendering judgment may order any money deposited agreeably to this section to be applied to the payment thereof." In addition, he points to the statutory provision requiring that when money deposited in lieu of bail with a county official is forfeited for failure to appear, the funds are to be deposited "to the credit of the county general fund." Ark. Code Ann. § 16-84-202 (Repl. 2005). Here, the funds Wardlaw deposited ultimately went to restitution, fines, and costs when her bond was forfeited. Day's

8

arguments speak to the district court's procedures, but none are dispositive of the issue presented in this case. In this appeal, we are not tasked with determining whether the district court complied with statutory requirements for the imposition or disbursement of fines, fees, and restitution.

Wardlaw responds that the circuit court correctly ruled that her bond forfeiture was not an admission of guilt and that the district court made no factual findings on her charge. She cites the Pulaski County Circuit Court case *Judy Miller v. Adam G. Weeks, et al.*, 60CV-19-8714 (2019), which is not precedent for this court. She further relies on Attorney General Opinion No. 94-252, in which the Director of the Arkansas Crime Information Center asked, "Under Arkansas law, may forfeiture of a bond be considered a conviction?" The Attorney General clearly stated "no; forfeiture of a bond cannot be considered a conviction under Arkansas law." Op. Ark. Att'y Gen. No. 252 (1994). In reaching that conclusion, the Attorney General relied on *Almond v. Countryside Casualty Co.*, in which the United States District Court for the Western District of Arkansas found that a bond forfeiture cannot be construed as a "fine" or "conviction" where there is no adjudication of guilt. 329 F. Supp. 137 (1971). In sum, Wardlaw argues that she did not admit to any act of deceit, fraud, or false statement, as she never appeared in court and never entered a plea, nor could there have been a finding of guilt by the district court in the absence of a plea or trial.

The circuit court's finding that only a bond forfeiture occurred in this case is not clearly erroneous. It is undisputed that the hot-check case was resolved without Wardlaw

ever appearing in court to enter a plea or having a trial.[5] The docket-sheet notations do not establish that Wardlaw entered a plea of guilty or no contest or that she was found guilty of the misdemeanor hot-check charge. Notably, the docket here indicates "GUILTY – BOND FOR"; the word "guilty" precedes the notation "bond forfeiture," not the offense with which Wardlaw was charged. A bond forfeiture does not constitute a conviction, a plea of guilty or no-contest, or a finding of guilt. On this record, we affirm the circuit court's finding that Day failed to prove that Wardlaw had been convicted of an infamous crime as defined in article 5, section 9 of the Arkansas Constitution or that she had pleaded guilty, pleaded no contest, or was found guilty of a public trust crime under Arkansas Code Annotated section 21-8-301(7).

For his second point on appeal, Day argues that the circuit court clearly erred by permitting Wardlaw to maintain wholly inconsistent positions. Day contends that Wardlaw is collaterally attacking the district court case, which is inconsistent with her other arguments and concessions and "amount[s] to trial by ambush." Day is wrong. Wardlaw does not claim that the case never existed or was otherwise invalid. Instead, she simply argues that she did not plead one way or the other and that there was no conviction—and as explained above, that accurately reflects the disposition of her case.

Affirmed.

Mandate to issue immediately.

Special Justice SHANE HENRY joins.

---

[5]The dissent's concern with the resolution of Wardlaw's hot–check case is misplaced. The case has been closed, as reflected on the certified docket.

10

WOMACK, J., and Special Justices TIFFANY MILLIGAN BROWN and DON CURDIE concur.

WOOD, J., dissents.

WEBB, HILAND, and BRONNI, JJ., not participating.

**SHAWN A. WOMACK, Justice, concurring.** I agree with the majority that Day failed to meet his burden to prove that Wardlaw had been convicted of an infamous crime and that she is ineligible to serve in the General Assembly under article 5, section 9 of the Arkansas Constitution. I would also, however, dismiss Day's claims against the Secretary of State because of sovereign immunity.

Although Day notes in his underlying complaint that the Secretary is a necessary party, and he is not making any specific claims against him, "[t]he detail and depth of the allegations against the Secretary of State are irrelevant" for purposes of sovereign immunity.[6] Absent an express constitutional provision to the contrary, the Secretary "is entitled to the protections of article 5, section 20 by virtue of his position as a state actor."[7] I respectfully concur.

Special Justice DON CURDIE joins.

**TIFFANY MILLIGAN BROWN, Special Justice, concurring.** I concur in the majority's affirmance of the circuit court's judgment. I write separately because my decision rests on Day's failure to show, by a preponderance of the evidence, that Wardlaw (1)

---

[6]*Blackburn v. Lonoke Cnty. Bd. of Election Comm'rss*, 2022 Ark. 176, at 10, 652 S.W.3d 574, 581 (Womack, J., concurring in part and dissenting in part) (citing *Thurston v. League of Women Voters of Ark.*, 2022 Ark. 32, at 17, 639 S.W.3d 319, 327 (Womack, J., dissenting)).

[7]*Id.*

11

sustained a disqualifying "conviction" within the meaning of article 5, section 9(a) of the Arkansas Constitution, or (2) "pleaded guilty or nolo contendere to or has been found guilty of" a disqualifying offense within the meaning of Ark. Code Ann. § 21-8-305(a).

The issue is whether Wardlaw sustained a disqualifying "conviction" for violating the Arkansas Hot Check Law within the meaning of article 5, section 9(a) and, relatedly, whether she "pleaded guilty or nolo contendere to or has been found guilty of" a violation of the Arkansas Hot Check Law within the meaning of Ark. Code Ann. § 21-8-305(a). To resolve the dispute, we must define "conviction." "[W]e interpret art. 5, § 9 to mean that a public official becomes subject to removal when *convicted by a plea of guilty or a verdict of guilty* in circuit court of a crime defined by the article. Anything less . . . effectively nullifies the provision." *Campbell v. State*, 300 Ark. 570, 577, 781 S.W.2d 14, 18 (1989) (emphasis added). Thus, to satisfy article 5, section 9(a), a defendant must have either pleaded guilty to, or been found guilty by, verdict of a disqualifying offense. This mirrors the requirements of Ark. Code Ann. § 21-8-305(a), with the addition that a person is disqualified from office for pleading no contest to a public trust crime.[8]

Notably, a bond forfeiture is *not* included in the definition of "conviction." *Almond v. Countryside Cas. Co.*, 329 F. Supp. 137, 141 (W.D. Ark. 1971), *aff'd*, 455 F.2d 503 (8th Cir. 1972). A bond forfeiture means that "the party failed to appear," resulting in "a forfeiture of the money deposited." *Id.* Bond forfeiture is wholly unrelated to the adjudication of the underlying crime. *See id.*

---

[8]"The plea of nolo contendere to a charge in a criminal case is an admission of guilt in the criminal case. *Lewis v. State*, 2017 Ark. 144, at 5, 516 S.W.3d 718, 722.

12

In sum, to be disqualified from holding public office, Wardlaw must have either (1) entered a plea of guilty or nolo contendere, or (2) been found guilty by verdict of violating the Arkansas Hot Check Law. The certified copy of the district court docket shows neither. First, it is undisputed that there was no criminal trial, as Wardlaw never even appeared to be arraigned, so there was no guilty verdict. Second, the docket *expressly* states "Plea: NO PLEA." Accordingly, Wardlaw neither entered a guilty plea nor pleaded no contest to violating the Arkansas Hot Check Law. This conclusion is supported by the fact that the docket does not reflect any judgment of conviction. The fact that there was no criminal trial, the express statement of "NO PLEA," and the lack of any judgment of conviction on the docket appears to foreclose any argument that Wardlaw pleaded guilty, pleaded no contest, or was found guilty by verdict of violating the Arkansas Hot Check Law.

But what to make of the docket entry "Disp. 09-27-18 GUILTY-BOND FOR" and the listing of fines, fees, and costs in the docket's upper right-hand corner? As previously indicated, a bond forfeiture is not a conviction. *Almond*, 329 F. Supp. at 141. Moreover, the word "GUILTY" precedes "BOND FOR"—not the charged offense. To the extent that the word "GUILTY" and the listing of fines, fees, and costs create uncertainty about whether Wardlaw was "convicted" of the hot-check violation, it was Day's burden to prove so by a preponderance of the evidence. *Wyatt v. Carr*, 2020 Ark. 21, at 10, 592 S.W.3d 656, 661.

The circuit court found that Day failed to satisfy that burden, and the record supports the court's finding that this was merely a bond forfeiture. Chief Clerk Ross testified that no plea was entered and that Wardlaw never appeared in court. She further testified that bond

13

forfeiture occurs *before* trial, no evidence was presented to the judge, no trial date was ever set, and no trial was ever held. Consistent with her testimony, the Arkansas Crime Information Center received "no returns" on criminal convictions for Wardlaw.

As to the fines, fees, and costs listed on the docket, Chief Clerk Ross "testified that, in her experience, the district judge in Clark County sets bond amounts in the amount of fines and restitution due in the case." This explains why Wardlaw's payment of $398.98 matches the enumerated listing of fines, fees, and costs on the docket. And, as the majority notes, whether the district court complied with statutory requirements governing the imposition and disbursement of fines, fees, and restitution is not before us.

There may remain unanswered questions about how the district court ultimately resolved Wardlaw's case. The case was closed without entry of either a plea or a guilty verdict. But the narrow question before the court is whether Wardlaw pleaded guilty to, or was found guilty of, violating Arkansas's Hot Check Law. I conclude that Day failed to present sufficient evidence to prove either circumstance.

**RHONDA K. WOOD, Justice, dissenting.** We must decide whether the circuit court clearly erred in rejecting Day's claim that Wardlaw was guilty of an infamous crime.[1] Because a preponderance of the evidence showed that Wardlaw was guilty of a hot-check violation, Day had a clear and certain right to a writ of mandamus ordering votes for Wardlaw not to be counted. Accordingly, I would reverse and find her ineligible to hold office.

---

[1] *Wyatt v. Carr*, 2020 Ark. 21, at 9–10, 592 S.W.3d 656, 661.

Per the habitual-offender statute, evidence of a conviction or finding of guilt may be proved by "a certified copy of the record . . . by a court of record.[2] While this case does not involve habitual-offender status, this statute provides the best requirement of what is necessary to prove a conviction. Day introduced a certified copy of the district court's record with the following notations:

> WARDLAW, LAURA MICHELLE
> Violation 1 Citation hc18-41 Age at Violation 35
> Plea: 09-27-18 NO PLEA
> 5-37-302(b)(1)(A) HOT CHECK<= $1,000 1ST OFFENSE
> Disp:09-27-18 GUILTY - BOND FOR
> Level: MU UNCLASSIFIED MISDEMEANOR
> Violation Date 07-13-18 (F: $290 R: $103.98 = $393.98)

The docket reflects a disposition of "Guilty – Bond For." All parties agree "Bond For" references bond forfeiture. But "Guilty" on a court disposition record must mean something. And it must relate to the offense listed, Hot Check, because bond forfeiture is not a criminal offense for which one could be determined guilty. Rather, bond forfeiture occurs according to a precise statutory forfeiture scheme.[3] This court has certainly seen actions arising from bond forfeitures. Those actions relate to a defendant's failure to appear and thus forfeits a posted bond—they do not negate a criminal charge as if it never happened.[4]

---

[2]Ark. Code Ann. § 5-4-504(b)(1) (Repl. 2024).

[3]Ark. Code Ann. § 16-84-201 (Supp. 2025); *see generally Bob Cole Bonding v. State*, 340 Ark. 641, 13 S.W. 3d 146 (2000).

[4]*Id.*

In addition to reflecting a disposition of "guilty," the certified record shows a payment of restitution, fines, and fees. A judge may order a defendant to pay restitution *if* the defendant has been found guilty, pled guilty, or doesn't contest an offense.[5] No provision of Arkansas law permits restitution to be ordered without one of those dispositions. And as we have said, "there can be *no fine without a conviction*."[6] Had it been a bond forfeiture, the county should not have turned the funds over to the city because "where money is deposited in lieu of bail with a county official, after the forfeiture" the county treasurer shall deposit the funds to the credit of the county general fund.[7] This was not done; instead, the funds were disbursed as if there were a conviction. The certified records support a finding of guilt for the offense.

Summing up the evidence, the circuit court considered: (1) a certified court record identifying Wardlaw as the defendant; (2) an admission by Wardlaw that she was the defendant and that intent to defraud was an element of the crime;[8] (3) a certified court record showing "no plea" but then a disposition of "Guilty – Bond For"; (4) a certified court record showing payment for restitution and fines; and (5) testimony the city received the funds from the county. This evidence met the preponderance-of-the-evidence standard that Wardlaw was guilty of an infamous crime that prevents her from holding office. The

---

[5]Ark. Code Ann. § 5-4-205(a)(1) (Repl. 2024).

[6]*Meritt v. Jones*, 259 Ark. 380, 384, 533 S.W.2d 497, 499 (1976) (emphasis added).

[7] Ark. Code Ann. § 16-84-202(b) (Repl. 2005).

[8]Wardlaw admits to both these in her response to the original petition.

word guilty can only mean guilty,[9] and a fine and restitution can only occur after a conviction under Arkansas law, whereas a bond forfeiture would have the funds remaining with the county. Thus, the circuit court clearly erred by finding Wardlaw eligible to hold office. Day had a clear and certain right to mandamus relief.

The contrary evidence was based on witness testimony that attempted to overcome the "guilty" language on a certified docket sheet. For example, Wardlaw argued she never pled guilty, never appeared, and only paid a bond that was forfeited. These arguments collaterally attack the entry of a "guilty" disposition. Generally, a defendant who does not appeal cannot collaterally attack a judgment of conviction.[10]

While I do not condone how the district court entered Wardlaw's guilty plea, Wardlaw bears responsibility. She knew of the charge, paid the amount due, and did not contest it.

The path the majority carves out for criminal charges in district court is troubling when sentencing and dispositions are statutorily based. What now becomes of Wardlaw's hot-check case remains to be seen. If it's not a conviction, is it an acquittal? I think not. I am curious to see how the district court resolves her case and all others like this.

I find that the plain language of our certified court records must be given due regard. I worry the majority's decision opens the door to additional collateral attacks on criminal convictions. I am also concerned that district courts may have been collecting fines and fees

---

[9]While I acknowledge the "no plea" language on the docket sheet, I find that the use of "guilty" and the overwhelming evidence of fines and restitution paid outweigh this language.

[10]*See Camp v. State*, 364 Ark. 459, 463, 221 S.W.3d 365, 367 (2006).

under the now-mistaken belief that voluntary payments to resolve criminal charges constitute a conviction. If those payments instead constitute bond forfeitures, those payments must be deposited in the county general fund, not remitted to the victim or district court.[11] The majority's decision could unwittingly open the door to illegal-exaction lawsuits against counties and cities. For these reasons, I respectfully dissent.

*Harris Shelton Hanover Walsh, PLLC*, by: *Jacob R. Swatley*, for appellant.

*The Sanders Firm, PLLC*, by: *Landon T. Sanders*, *Preston T. Sanders*, and *J. Locke Adair*, for appellee Laura Wardlaw.

*Tim Griffin*, Att'y Gen., by: *Steven Benson*, Ass't Att'y Gen., for Arkansas Secretary of State Cole Jester.

*Matthew J. Shepherd , P.A.*, by: *Matthew J. Shepherd*, for appellees Republican Party of Arkansas; and Sharon Stuthard, in in her official capacity as Secretary of the State Committee of the Republican Party of Arkansas.

---

[11]Ark. Code Ann. § 16-84-202(b) (Repl. 2005).